## Kohler Estate

*John A. Friedrich* and *William Goldstein,* of *Goldstein and Goldstein,* for petitioners.

*Thomas J. Timoney,* of *Timoney, Knox, Avrigian & Hasson, William S. Rawls,* of *Ballard, Spahr, Andrews & Ingersoll, William Carson Bodine,* of *Pepper, Hamilton & Sheetz, and Donald E. Hogeland,* for respondents.

TAXIS, P. J., October 24, 1974.—This matter comes before the court upon preliminary objections to a petition to open an adjudication. The petition to open was filed by the children of Robert F. Campbell[1] contending that they were not given notice of the audit held on December 3, 1973, of the third account of The Fidelity Bank, and that they were parties in interest to whom notice should have been given. The third account of The Fidelity Bank in the Estate of Martin Luther Kohler had been filed because of the death, on March 24, 1973, of Else K. Campbell, the mother of Robert F. Campbell. The petition for adjudication filed by The

---

[1] William Campbell, Jr., a grandchild, is also a petitioner.

Fidelity Bank at audit omitted any reference to the children of Robert F. Campbell (these petitioners) and the award suggested by The Fidelity Bank omitted any awards to them. The adjudication of this court dated December 6, 1973, confirmed the account and made awards as suggested by The Fidelity Bank.

The petition to open names as respondents The Fidelity Bank, Trustee, and the six beneficiaries to whom distribution was directed by the adjudication of December 6, 1973. Preliminary objections were filed by The Fidelity Bank, asking that the petition to open be dismissed because the petitioners have no standing or capacity to file this petition, since they are not parties in interest in the trust.

Martin Luther Kohler died on August 20, 1916, creating a trust, income from which was to be paid to his two surviving daughters, Ruth K. Bates and Else K. Campbell, during their respective lifetimes. He then provided, upon the death of either of such daughters, as follows:

"Upon the death of either of my said daughters then I direct the share of such daughter to be paid to her issue per stirpes as such issue shall arrive at the age of twenty-five years or that the same be paid to such issue in such manner and in such sums as my said daughters shall by their respective wills direct."

Else K. Campbell died testate and by her will, in parts here pertinent, provided as follows:

"SECOND: All the residue of my estate, of whatever nature and wherever situated, including that portion of my estate over which I have power of appointment, granted to me under the will of my father, Martin Luther Kohler, deceased, I dispose of as follows:

"B. Of the balance of the residue remaining, I give, devise and bequeath:

"(1) One equal part thereof to my daughter, Elizabeth Hansell

"(2) One equal part thereof to my son, James D. Campbell

"(3) One equal part thereof in equal shares to the three children of my deceased daughter, Dorothy Miller, these children being Thomas R. Miller, Jr., Edwin L. Miller and Scott C. Miller.

"(4) One equal part thereof to my son, Robert F. Campbell, if he survives me. Should my said son, Robert F. Campbell, predecease me, then his share shall fall into my residuary estate and shall thus increase the shares of the other residuary legatees."

Petitioner poses the pivotal issue as follows: whether the will of Martin Luther Kohler created a special power of appointment in Else K. Campbell by which she could exclude the children of Robert F. Campbell from a share in the Kohler trust (which she did).

Fidelity contends that the will of Martin Luther Kohler created in his daughters, Else K. Campbell and Ruth K. Bates, exclusive special powers of appointment over their respective shares of the corpus, and that, since Robert had predeceased his mother (he died on January 25, 1967), her will expressly excluded him, so that his stirpes were not parties in interest and thus were not required to be notified of the audit of the third account of The Fidelity Bank.

Petitioners argue that three important characteristics of special powers of appointment are lacking in the Kohler will, from which the petitioners conclude that no special power was granted. Petitioners argue that testator did not use the word "appoint." Of course, the word "appoint" is not essential to the creation of a power of appointment: Restatement, Property, §323,

Comment a. In Emery Trust, 21 Fiduc. Rep. 471, a power of appointment was created by the words, "as she may by her will direct," language almost identical to that employed in the Kohler will. This argument of petitioners is, therefore, not persuasive.

Petitioners next argue that a provision in default of appointment *uniformly* appears where a power of appointment is intended. Section 367 of the Restatement of Property deals with disposition of unappointed property *where there is no specific gift in default of appointment,* so that a provision in default of appointment is *not* essential to the creation of a power of appointment. In addition, testator did effectively provide for disposition of the unappointed share of his estate in the event of a default of appointment, namely, that such share be paid to his daughters' issue, per stirpes, as such issue shall arrive at the age of 25 years. This argument of petitioners is, therefore, not persuasive.

Petitioners' final argument that the Kohler will does not create a power of appointment is concerned with the description of the class among which the donee may appoint. Petitioners' argument is that the word "such" is *uniformly* used before the description of the class to indicate that the donee may pick and choose among the members of the class and even may exclude members of the class. A quick answer to this argument is that the word "such" appears three times in the power of appointment clause, which provides that the share of each of testator's daughters be paid to *such* issue in *such* manner and in *such* sums as the daughter shall by her will direct. The words "such issue" appear, in themselves, to satisfy clearly this phase of the requirements insisted upon by petitioners with regard to special powers of appointment.

With further regard to this argument, however, it is argued that the words "such issue" were intended to mean "said issue," in which case the *essential* word "such" is missing. But the word "such" is not *essential* to a power of appointment and is not *uniformly* used. The first illustration of an exclusive power of appointment as described in Restatement, Property, §360, is as follows:

"A by will transfers a fund in trust to pay the income to B for life and then to pay the principal to the children of B as B shall by will appoint and in default of appointment to the children of B equally. B has an exclusive power."

Clearly, therefore, an exclusive special power of appointment can be granted without the use of the word "such."

Petitioners' position with regard to the meaning of the words "such issue" requires an interpretation of the will as follows:

"Upon the death of either of my said daughters then I direct the share of such daughter to be paid to her issue per stirpes as such issue shall arrive at the age of twenty-five years or that the same be paid to (her said) issue (per stirpes) in such manner and in such sum as my said daughters shall by their respective wills direct."

The court considers this distortion of the language of the will.

Even assuming arguendo that the words "such issue" mean "said issue," the language nevertheless creates an exclusive special power of appointment. A power of appointment is no more than a power created by a person having property subject to his disposition enabling the donee of the power to designate the transferees of the property or the shares in which the

property shall be received: Restatement, Property, §318. A power is special if it can be exercised only in favor of persons, not including the donee, who constitute a group not unreasonably large; and a power is general if it can be exercised even in favor of the estate of the donee: Restatement, Property, §320.

Where the donee of a special power of appointment may exclude one or more objects of the power from distribution of the property covered thereby, the donee has an exclusive special power of appointment as opposed to a nonexclusive special power of appointment, where the donee may not exclude a single object of the power from distribution of the property covered thereby: Restatement, Property, §360. The determination of "exclusive" or "nonexclusive" is a matter of the intention of the creator of the power.

Even if, as petitioners contend, the words in the will "such issue" were intended to mean "said issue," the plain meaning of testator's language would then be as follows:

"Upon the death of either of my said daughters then I *direct the share* of such daughter *to be paid to her issue (1)* per stirpes as such issue shall arrive at the age of twenty-five years *or* that the same *be paid to (said) issue (2)* in such manner and in such sums as my said daughters shall by their respective wills direct."

The language chosen by testator does not, in the opinion of the court, manifest an intention that his daughters' powers of appointment be nonexclusive. On the contrary, the words "in such manner" manifest an intention that his daughters' powers of appointment be exclusive, and the exclusion of the petitioners by the will of testator's daughter, Else K. Campbell, is effective. Accordingly, petitioners are not parties in interest in this estate and thus were not required to be

notified of the audit of the third account of The Fidelity Bank. The preliminary objections are, therefore, sustained and the petition to re-open the adjudication is dismissed.

## ORDER

And now, October 24, 1974, after careful consideration of the briefs and argument of counsel, the preliminary objections to the petition to re-open the adjudication are sustained and the petition to re-open the adjudication is dismissed.